The BOARD OF COUNTY COMMISSION-
ERS OF the COUNTY OF CAMPBELL
and the County of Campbell, State of
Wyoming, Appellants (Defendants),

v.

Allen RIDENOUR, William Schaffner,
James Lea and Ron Bourquin,
Appellees (Plaintiffs).

Allen RIDENOUR, William Schaffner,
James Lea and Ron Bourquin,
Appellants (Plaintiffs),

v.

The BOARD OF COUNTY COMMISSION-
ERS OF the COUNTY OF CAMPBELL
and the County of Campbell, State of
Wyoming, Appellees (Defendants).

Nos. 5333, 5334.

Supreme Court of Wyoming.

Feb. 3, 1981.

Rehearing Denied March 25, 1981.
See 627 P.2d 163.

Jeffrey J. Gonda, Sheridan, argued for appellants in No. 5333 and appellees in No. 5334.

Terrence L. O'Brien (argued), and Jeffrey M. Kohlhas, legal intern, Omohundro & O'Brien, Buffalo and Lucas & Monaghan, Miles City, Mont., on briefs, for appellees in No. 5333 and appellants in No. 5334.

The Defense Lawyers Association of Wyoming, Inc. filed an amicus curiae brief for appellants in No. 5333 and appellees in No. 5334.

The Wyoming Trial Lawyers Association filed an amicus curiae brief for appellees in No. 5333, and appellants in No. 5334.

Before ROSE, C. J.*, and McCLINTOCK, RAPER,** THOMAS and ROONEY, JJ.

RAPER, Justice.

This appeal is a comparative negligence case arising from a judgment holding the defendants liable despite a jury's finding

* Chief Justice since January 5, 1981.   ** Chief Justice at time of oral argument.

that they were less negligent than each of the plaintiffs. The main focus of the appeal is upon the construction to be given § 1-1-109, W.S.1977, commonly referred to as the Wyoming Comparative Negligence Statute, where there are multiple plaintiffs and multiple tortfeasors.

We will reverse and remand for a new trial.

On October 21, 1975, a Jeep Cherokee owned and operated by James Hance was traveling in a westerly direction on Small Road, also known as Little Thunder Road, in southern Campbell County. At approximately 6:27 p.m., the vehicle failed to negotiate a curve and rolled over several times injuring the occupants: Allen Ridenour, William Schaffner, James Lea, and Ron Bourquin (plaintiffs).

On October 18, 1979, after a settlement had been reached with the driver, this action was commenced against the Board of County Commissioners of the County of Campbell, and the County of Campbell, State of Wyoming (Board). The complaint alleged that Little Thunder Road, a county highway, had been negligently built and maintained by the Board and that the negligence was a proximate cause of the October 21, 1975 accident in which plaintiffs were injured. The Board's answer denied any negligence on its part and further claimed that plaintiffs' injuries resulted solely from the driver's negligence and the plaintiffs' own contributory negligence. Trial was set for January 22, 1980.

In a pretrial memorandum, plaintiffs moved for a continuance of the case for the reason that James Lea, one of the plaintiffs, was incarcerated in the federal penitentiary in Safford, Arizona, and would not be released until sometime in June 1980. Continuance was denied. Thereafter, plaintiffs again moved for a continuance citing that Mr. Lea's incarceration would end on May 27, 1980, and that he would not be eligible for a furlough to attend the trial until sometime after February 8, 1980. That motion was also denied. Plaintiffs

then filed a motion in limine to restrict the use of a deposition given by Lea in a prior action against James Hance, the driver of the automobile. That motion was also denied, but the trial judge agreed to reserve the question of Lea's damages until a later time.

The case was tried as scheduled and submitted to the jury on January 24, 1980. The judge instructed the jury:

"This case must be determined on the basis of comparative fault of the parties. In deciding the case you will need to know the meaning of the terms 'negligence' and 'fault.'

"Negligence is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing.

"A party is at fault when he is negligent and his negligence caused or contributed to the event which brought about the injury or damages for which claim is made.

"It will be necessary for you to determine the percentage of fault of the parties. It also will be necessary for you to determine the amount of damages sustained by any party claiming damages.

"The laws of Wyoming applicable to this case require me to reduce the amount of damages you have awarded to any party by the percentage of fault that you find is attributable to that party.

"*A party will be entitled to recover damages if his fault is less than 50% of the total fault of all parties. A party will not be entitled to recover damages, however, if his fault is 50% or more.*" (Emphasis added.)

The jury was further instructed:

"Your first obligation is to determine the fault, if any, of the parties. Next, you must assign a percentage to that party's fault. This percentage figure for

each party may range from zero percent (0%) to one hundred percent (100%). When the percentage of fault of all parties (being compared) are added together, the total must equal one hundred percent. [sic] (100%).

"The parties to whom you have the discretion to assign fault are:

"1. Campbell County and the Board of Campbell County Commissioners.

"2. Allen Ridenour

"3. William Schaffner

"4. James Lea

"5. Ron Borquin [sic]

"6. James Edward Hance

"Your next obligation is to determine the amount of damages sustained by the following parties:

"1. Allen Ridenour

"2. William Schaffner

"3. Ron Borquin [sic]

"In arriving at the full damage figure for each party, you should not consider the question of fault. Do not reduce the damages by any percentage of fault."

In the early morning hours of January 25, 1980, the jury returned its special verdict:

"We, the jury, present the following answers to the questions submitted by the court:

"1. Considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the following:

| | | |
|---|---|---|
| "1. Campbell County and the Board of Campbell County Commissioners. | (0% to 100%) | 5 % |
| "2. Allen Ridenour | (0% to 100%) | 6 % |
| "3. William Schaffner | (0% to 100%) | 6 % |
| "4. James Lea | (0% to 100%) | 0 % |
| "5. Ron Borquin [sic] | (0% to 100%) | 6 % |

| | | |
|---|---|---|
| "6. James Edward Hance | (0% to 100%) | 77% |
| "TOTAL | | 100% |

"2. Without considering the percentage of fault found in question one, what total amount of damages do you find was sustained by the following parties:

| | | |
|---|---|---|
| "1. Allen Ridenour | $ | 75,000.00 |
| "2. William Schaffner | $ | 10,000.00 |
| "3. Ron Borquin [sic] | $ | 0 |

"/s/ Ralph H. Belcher
Forewoman or Foreman"

Following the trial, the district court held a hearing in order to determine how to mold a judgment based upon the jury's special verdict. After the hearing, the district court ruled that under § 1–1–109, W.S. 1977, i. e. the Wyoming Comparative Negligence Statute, a plaintiff can recover from any negligent defendant, if the negligence of a plaintiff is found to be less than the *aggregate* negligence of all parties from whom recovery was or is sought. Further, joint tortfeasors are jointly and severally liable; however, the right of contribution under § 1–1–113, W.S.1977,[1] operates to allow a defendant to offset his liability to the plaintiff where the plaintiff has previously settled with the other tortfeasor and the percent of the damages allowed to be offset will be equal to the percent of negligence attributed by the jury to the joint tortfeasor not named as a party defendant.

Applying these conclusions of law to the facts before it, the court first found that the aggregate negligence (82%) of the parties from whom the plaintiffs sought recovery was greater than the aggregate negligence of the plaintiffs (18%); thus, the Board was liable. Next, it concluded that, since a settlement had been made by the plaintiffs with Hance, whose negligence the jury found to be 77% of all the negligence contributing to the accident, any claim

---

1. Section 1–1–113, W.S.1977:

"(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

"(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide;

but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

against the Board had to be reduced by 77%, i. e. the percent of negligence assigned to Hance. Finally the court even further reduced the claim by the percent of negligence assigned to the plaintiffs in the aggregate. This left the Board liable for 5% of each of the plaintiffs' damages.

On February 29, 1980, plaintiffs filed a motion for a new trial on the grounds that the court had abused its discretion denying plaintiffs' request for continuance in requiring the case to go to trial without the plaintiff, James Lea. After a hearing, the plaintiffs' motion for new trial was denied by order dated April 29, 1980.

On May 6, 1980, the Board appealed from the judgment of the court dated February 22, 1980. On May 7, 1980, plaintiffs appealed from the judgment dated February 22, 1980, and the order denying plaintiffs' motion for a new trial dated April 29, 1980. The appeals were docketed, but by its order dated June 20, 1980, this court dismissed both for lack of finality in that the damages of James Lea had not been determined by the district court.

On July 2, 1980, the district court entered judgment in favor of the plaintiff James Lea and against the defendant in the amount of $500.00. On July 2, 1980, the Board and the plaintiffs filed their second notices of appeal. The cases were redocketed in this court and assigned Nos. 5333 and 5334, respectively, and then consolidated for purposes of appeal.

I

██ As a preliminary matter, we must address plaintiffs' August 8, 1980 motion to dismiss the appeal of the Board, case No. 5333. The motion stems from the fact that the Board's July 2, 1980 notice of appeal merely stated that it was taken from the judgment of the court entered July 2, 1980 and further that it failed to mention the jury verdict or the judgment on the verdict dated February 22, 1980. Since the issue presented for decision by the Board's appeal was whether plaintiffs' negligence should be compared to each joint tortfeasor individually or to all joint tortfeasors in the

aggregate, and since that issue was decided in the judgment of the district court dated February 22, 1980, the plaintiffs argue that the notice of appeal must include a reference to the February 22, 1980 judgment and that the failure to do so destroys our jurisdiction to hear the issue the Board raised. To support this argument, *Hayes v. Nielson*, Wyo.1977, 568 P.2d 905, was cited.

In *Hayes*, a partial summary judgment had been entered on March 22, 1977. On April 15, 1977, the appellant filed a notice of appeal from that order. The case was subsequently tried to a jury, and on May 5, 1977, judgment based upon the resulting verdict was entered. Appellant filed a second notice of appeal on May 26, 1977, designating only the May 5 judgment as the basis of his appeal. This court dismissed that appeal as to the summary judgment stating:

"No appeal will lie from an order granting a partial summary judgment because such an order is not a final order under Rule 54(b), W.R.C.P. [Citations] The Notice of Appeal to the Supreme Court filed on April 15, 1977, therefore was premature and ineffective. [Citation]

"In the Notice of Appeal filed May 26, 1977 Appellant specifically designated certain parts of the Judgment entered May 5, 1977 which he appealed from in accordance with Rule 73(b), W.R.C.P. No mention was made of the Order granting the partial summary judgment entered March 22, 1977, nor was it referred to in any way. Although the Order granting the partial summary judgment became final and appealable upon entry of the Judgment on May 5, 1977, the Notice of Appeal filed May 26, 1977 was not sufficient to present any claim of error arising out of the Order granting the partial summary judgment. [Citations]

"IT IS THEREFORE ORDERED that the appeal from the Order granting the partial summary judgment, No. 4829 in this Court, be, and it hereby is, dismissed because of lack of jurisdiction in this Court." 568 P.2d at 906.

Though *Hayes* appears to mandate the dismissal of the Board's appeal in this case, we must first consider the Wyoming Rules of Appellate Procedure adopted in 1978 subsequent to the *Hayes* decision. At that time Rule 73(a), W.R.C.P. was superseded by Rule 2.01, W.R.A.P. which now provides in pertinent part:

"A notice of appeal, in a civil or criminal case, *filed prematurely* shall be treated as filed on the same day as entry of judgment or final order, provided it complies with Rule 2.02, W.R.A.P." (Emphasis added.)

Rule 2.02 states:

"The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or final order or part thereof appealed from; and shall name the court to which the appeal is taken."

Under these rules, *Hayes* can no longer be viewed as controlling, since a premature notice is not now void per se.

In the present case, the Board filed a notice of appeal on May 6, 1980, from the judgment of the district court dated February 22, 1980. This was, in the words of *Hayes*, supra, a premature notice. But under Rule 2.01, supra, a premature notice becomes operative on the day that final judgment is entered, so long as the notice complies with Rule 2.02, supra. Therefore, in this case, since the May 6, 1980 notice *was written in conformity with Rule 2.02*, it became effective July 2, 1980, the date that final judgment was entered; thus, we will consider the Board's appeal, as well as the plaintiffs' cross appeal.

## II

Now, turning to the Board's appeal, in order to construe the Wyoming Comparative Negligence Act, we will first consider the statutory background. Prior to 1973, Wyoming followed the common law doctrine of contributory negligence. This negligence was defined as:

"* * * conduct on the part of a plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant in bringing about plaintiff's harm. [Citation] The standard of conduct to which he should conform is the standard to which a reasonable man would conform under like circumstances. [Citation] The words 'reasonable man' denote a person exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. [Citation]" *Johnston v. Vukelic*, 1950, 67 Wyo. 1, 213 P.2d 925, 930.

The question as to whether the plaintiff was contributorily negligent was one of fact and thus normally for the jury to decide. The burden of proving that the plaintiff's conduct amounted to contributory *negligence fell upon the defendant. Johnston v. Vukelic*, supra, 67 Wyo. 1, 213 P.2d 930. If the burden was satisfied and contributory negligence was found, then the plaintiff was barred from any recovery. *Town of Douglas v. Lore*, Wyo. 1962, 375 P.2d 399, 400.

■ This rule, originally, found throughout the nation, was frequently criticized because of the all-or-nothing harsh results that it often produced; a plaintiff could not recover no matter how slight his negligence or extreme the defendant's if any contributory negligence was attributed to plaintiff. In order to ameliorate the situation, various states began experimenting with alternatives which would allow recovery despite the existence of some contributory negligence.[2] Wyoming's first step toward joining that movement was taken in 1973.[3] As now shown in the 1977 Republished Edition,

---

2. See, Anno. 78 A.L.R.3d 339, 344, § 2[a], Modern Development of Comparative Negligence Doctrine having applicability to Negligence Actions Generally. See also, Comment, Comparative Negligence in Wyoming, 8 Land & Water L.Rev. 597 (1973).

3. Section 1, ch. 28, Session Laws of Wyoming, 1973. Amended to add informing the jury of the consequences of its verdict by § 1, ch. 188, Session Laws of Wyoming, 1977.

including various amendments, it appears as § 1–1–109, W.S.1977:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering; [4]

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

The office of statutes is to remedy defects in the common law as they are developed and to adapt to changes of time and circumstances. *Zancanelli v. Central Coal & Coke Co.*, 1918, 25 Wyo. 511, 173 P. 981.

### III

The issue presented by the parties in this case concerns what the appropriate construction of the Comparative Negligence Act should be when negligence of more than one plaintiff and more than one defendant is involved; should the contributory negligence of a plaintiff be compared only one on one against the negligence of each party from whom recovery is sought, or should it be compared to the aggregate negligence of all parties against whom recovery is sought? In particular, the parties zero in on the language in subsection (a)

---

4. As will be explained later in this opinion, § 1–1–109(b)(i) and (ii) does not correctly set out legislative action.

which indicates that recovery will be allowed, "if the contributory negligence was not as great as the negligence of the person against whom recovery is sought." We will quote extensively from the briefs of the parties and amicus curiae to not only demonstrate in detail their positions, but also to aid in understanding the issues presented here. This case is one of first impression in Wyoming. It is important that we lay to rest in this jurisdiction confusion surrounding the application of the doctrine of comparative negligence in the presence of multiple actors named and unnamed as parties.

The Board's position is that each plaintiff's negligence should be compared only with the negligence of the defendant from whom recovery is sought and that if it is greater than the defendant's negligence, then recovery is barred; i. e., in the case before us, a plaintiff with 6% negligence should not recover against the Board because its negligence is only 5%. In support of this assertion, it states:

"A simple and literal reading of this statute requires that a Plaintiff be less negligent than any individual Defendant in order to recover against that Defendant. The Wyoming Supreme Court has repeatedly stated that words and phrases used in a statute shall be taken in ordinary and usual sense and when a word has a well-settled meaning in law at the time of its usage it will be so understood unless a different meaning in [sic] unmistakenly intended. * * *"

The Board secondly argues:

"Wyoming's Comparative Negligence Statute was adopted verbatim from the Wisconsin Comparative Negligence Statute in 1973. The Wyoming Courts have made it clear that the intent of the Wyoming State Legislature was to adopt the Wisconsin judicial construction of that comparative negligence statute at the date of its enactment. *Woodward v. Haney*, 564 P.2d 844, 846 (Wyo.1977). The Wisconsin judicial construction of this

comparative negligence statute at the time Wyoming adopted it, clearly did not allow a Plaintiff to recover against any individual Defendant found to be less at fault than the Plaintiff. * * * "

The Board further argues:

"Certain other writers and scholars likewise seem to agree with this 'Wisconsin Rule' in giving meaning to the statutory scheme of Wyoming's Comparative Negligence Statute. Mr. Smith, in his law review article in the University of Wyoming Land & Water Law Review, found through his research that a Plaintiff could not recover under Wyoming's statute if his negligence was as great as the negligence of any individual Defendant. Smith, 'Comparative Negligence in Wyoming', VIII Land & Water L.Rev. 597, Pages 603–604 (1973). * * * "

The plaintiffs, on the other hand contend that the contributory negligence should be compared to all outstanding negligence such that they are barred from recovering against a negligent defendant, only when their contributory negligence equals fifty percent or more, i. e., Hance's 77% negligence and the Board's 5% negligence, or a total of 82% negligence, is greater than each plaintiff's negligence of 6% and each plaintiff may therefore recover from both defendants. Thus, no matter how insignificant the negligence of the party from whom recovery is sought as long as he is negligent, if the plaintiff's negligence is less than fifty percent of the total negligence of all tortfeasors named as defendants and unnamed as parties having a causal connection with plaintiffs' injuries, then recovery is allowed. In support of this, the plaintiffs argue that their construction of the Comparative Negligence Act is fundamentally more fair:

" * * * The issue presented is one of first impression for this Court. However, the Courts have interpreted statutes substantively the same as Wyoming's with conflicting results. One line of authority was developed in Arkansas and was recently adopted in Oklahoma, hereafter the 'Arkansas Rule'. A second line of

authority reaching the opposite result was developed by the Wisconsin Court, hereafter the 'Wisconsin Rule'.

* * * * * *

"Under the 'Arkansas Rule' the Plaintiff is entitled to his proportionate recovery against all persons causing him injury if the Plaintiff's negligence is less than the aggregate negligence of all such persons. * * *

"Under the 'Wisconsin Rule' the negligence of the Plaintiff is compared to that of each individual party against whom recovery is sought in order to determine whether the Plaintiff may recover from that particular tort-feasor. * * *

"The basic purpose of comparative negligence legislation is to correct the harsh and unjust consequences of the doctrine of contributory negligence, whereby a Plaintiff who was slightly negligent received absolutely nothing for his injuries, and to distribute the payment of damages among those who ultimately caused that damage. A comparison of the 'Wisconsin Rule' with the 'Arkansas Rule' clearly demonstrates that the 'Arkansas Rule' more satisfactorily accomplishes this result.

"Under the 'Wisconsin Rule', the Plaintiff's chance of recovery is jeopardized by the fact that several tort-feasors happen to be involved. As the number of tort-feasors increases, the Plaintiff's chance of recovery decreases since the total percentage of the causal negligence attributable to him which will operate as bar to his recovery must necessarily decrease, a result which is not equitable, reasonable or good social policy. Moreover, it encourages a defense strategy to broaden, by joinder, the number of Defendants among whom fault could be apportioned and thereby reduce the Plaintiff's chance of success against any of them.

"The 'Arkansas Rule' retains the modified comparative negligence position taken by the Arkansas (and Wyoming) legislature—a Plaintiff who is fifty percent (50%) or more at fault can never recover. However, a Plaintiff who is less negli-

gence [sic] than all of those from whom he is seeking recovery can recover and the contribution statute (W.S. § 1–1–110 to 1–1–113) is available to allocate the liability of the several tort-feasors in accordance with the relative degree of fault of each. The 'Arksansas [sic] Rule' provides for consistant [sic], uniform and just results in all cases (as demonstrated infra, the 'Wisconsin Rule' tends to be very legalistic and can produce illogical consequences in certain fact situations)." (Footnotes omitted.)

To further bolster their position, plaintiffs point to § 8–1–103, W.S.1977, 1980 Cum.Supp., which provides in part:

"(a) The construction of all statutes of this state shall be by the following rules, unless that construction is plainly contrary to the intent of the legislature:

\* \* \* \* \* \*

"(v) Words in the plural form include the singular and words in the singular form include the plural;"

They then argue:

"To ignore the Rules of Construction Statute would be to presume that the legislature intended a futile act, which Courts may not do. [Citation] The Comparative Negligence Statute must be read in light of and in harmony with the Rules of Construction Statute. [Citations]

"The proper construction of words 'the person against whom recovery is sought' in the comparative negligence statute is 'the person [or persons] against whom recovery is sought' [bracketed material supplied]. That is precisely the interpretation the Trial Judge placed on the statute (Judgment, R. 61) and is also how he instructed the jury (R. 43–44)." (Bracketed material in original.)

Plaintiffs' final point is:

"In construing the Comparative Negligence Statute the Court must also consider the legislative intent expressed in W.S. § 1–1–101 which provides:

" 'The Code of Civil Procedure and all proceedings under it shall be liberally construed to promote its object and

assist the parties in obtaining justice. The rule of common law states that statutes in derogation thereof must be strictly construed has no application to the Code of Civil Procedure, but this shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement or of a penal nature.'

"The Comparative Negligence Statute was enacted to correct the inequities and harshness of the common law doctrine of contributory negligence. Liberal construction of the comparative negligence statute with a view to 'the mischief the statute was intended to cure', *Basin Elec. Power Co-op v. State Bd. of Cont.,* 578 P.2d 557, 563 (Wyo.1978), coupled with due regard for the Rules of Construction Statute necessarily requires the adoption of the 'Arkansas Rule', comparing the Plaintiff's negligence with that of the persons against whom recovery is sought."

The amicus curiae brief of the Defense Lawyers Association of Wyoming counters plaintiffs' argument by stating:

"1. The clear meaning of § 1–1–109 W.S.1977 is that a person may not recover a judgment from another whose negligence is equal to or less than his own. The statute provides that contributory negligence is not a bar to recovery of damages for injury caused by negligence 'if the contributory negligence was not as great as the negligence of the person against whom recovery is sought.' The use of the singular noun 'person' dictates that the negligence of the parties is to be compared individually rather than collectively. Were any other construction intended by the legislature when the law was adopted, the meaning could have been changed by use of the words 'not greater than the negligence of the person or party or persons or parties against whom recovery is sought,' thus indicating an intent to compare percentages of negligence collectively. (The quoted suggestion is the language of the Texas statute, Tex.Rev.Civ.Ann. Art. 2212a ¶ 1 (Vernon Supp., 1976–77)). Or, instead of beating

around the bush, the legislature could have approached the problem directly, as have Connecticut, Oregon and Nevada, by specifically providing that the plaintiff's neglience [sic] is to be compared with the combined negligence of the defendants. [Citations]

"As the Wyoming statute plainly reads, the percentage of negligence of the person seeking to recover damages should be compared to that of each person against whom recovery is sought on an individual basis. The plaintiffs here must not be permitted to change the plain meaning of the statute by turning 'person' into 'persons'.

"2. In addition to requiring individual comparison of degrees of negligence, the statute clearly states that the comparison is to be between the person seeking to recover damages and the 'person *against whom* recovery is sought.' (Emphasis supplied). In the instant case the plaintiffs seek to recover only against Campbell County. Therefore, under a literal reading of the statute, the comparison may only be between a plaintiff and Campbell County. The trial court found it necessary to determine the degree of negligence attributable to the automobile driver in order to fix the relative negligence of the parties, but the driver is not a 'person against whom recovery is sought,' and it therefore goes against the plain meaning of the statute to combine his negligence with that of Campbell County to allow plaintiffs to recover against the County.

"3. The clear meaning of Wyoming's comparative negligence statute is not changed or modified by § 8–1–103(a)(v) W.S.1977, which sets forth rules for statutory construction in Wyoming, and provides, in part, that 'words in the singular form include the plural * * *.' This language would not apply where such a construction would be 'plainly contrary to the intent of the legislature,' which is not only the lead-in language of § 8–1–103, but is the cardinal rule of statutory construction in any context.

"The word 'person' as used in the comparative negligence statute clearly refers to an individual or a single party. If a statute is plain, there is no room for construction. [Citation]

"The words of the statute as adopted are clear, and the presumed legislative intent reinforces the clear meaning of the statute. Judge Liamos' construction of § 1–1–109 W.S.1977 is plainly contrary to the intent of the legislature."

The Defense Lawyers' brief goes on to argue:

"Policy considerations also indicate the greater fairness of comparing negligence individually. To reach an opposite result would permit a plaintiff to recover from a defendant less negligent than he, a result manifestly unjust. Here, where the plaintiff's own negligence has contributed to his injury, and where he has released the party whose negligence was overwhelmingly responsible for the injury, it would be grossly unfair to permit that plaintiff to recover from a party whose negligence is less than his own."

### IV

After carefully reviewing these arguments, we conclude that the legislature in enacting the Comparative Negligence Act adopted the "Wisconsin Rule." We have reached this conclusion for several reasons. First, the simple language of the statute is that the percentage of the plaintiff's negligence will be compared to the percentage of negligence attributed to "*the person* against whom recovery is sought." (Emphasis added.)

The plaintiffs seek comfort in § 8–1–103(a)(v):

"(a) The construction of all statutes of this state shall be by the following rules, unless that construction is *plainly contrary to the intent of the legislature*:

\*　　\*　　\*　　\*　　\*　　\*

"(v) Words in the plural form include the singular and words in the singular form include the plural;" (Emphasis added.)

It must be realized that legislative rules for the construction of statutes are no more than that, and, as expressed by the foregoing section, are not to be applied when "plainly contrary to the intent of the legislature."

■■■■ The primary objective in ascertaining the meaning of a law is legislative intent; and, if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect. Intent must be found in the language of the statute itself. *Oroz v. Hayes*, Wyo.1979, 598 P.2d 432, 434. Where the language of a statute is plain and unambiguous and conveys clear and definite meaning, there is no occasion for resorting to rules of statutory construction; and the court has no right to look for and impose another meaning. *Wyoming State Treasurer v. City of Casper*, Wyo.1976, 551 P.2d 687, 698. The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. *State v. Stern*, Wyo.1974, 526 P.2d 344, 346. Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, 632. Courts will not usurp the power of the legislature by deciding what should have been said. *Barber v. State Highway Commission*, 1959, 80 Wyo. 340, 342 P.2d 723. There is, therefore, no need to apply any rules of construction and go outside of the words of the applicable statute itself.

Second, a comparison of the language of § 1–1–109(a), W.S.1977, to the Wisconsin Comparative Negligence Act as it existed prior to 1971 clearly indicates that the Wyoming legislation was derived from the Wisconsin act,[5] as we have previously held. *Woodward v. Haney*, infra. Other state legislatures, that have adopted comparative negligence statutes based upon Wisconsin's, have inserted specific language to demonstrate their intent to apply the "Arkansas Rule" when multiple defendants or potential defendants are present. For example, in Kansas, recovery is allowed if the plaintiff's "negligence was less than the causal negligence of the party or *parties* against whom claim for recovery is made * * *." (Emphasis added.) K.S.A. § 60–258a (1976). In Connecticut, liability will exist if the plaintiff's negligence "was not greater than the combined negligence of the person *or persons* against whom recovery is sought. * * * *" (Emphasis added.) Conn.Gen.Stat. § 52–572h(a) (1975). However, the Wyoming legislature did nothing to indicate that its intent was to deviate from the "Wisconsin Rule."

The Arkansas statute is not the same as the Wisconsin and Wyoming statutes. The Arkansas statute reads:

"Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage." Ark.Stats., § 27–1730.1 (1962).

The Arkansas court in *Walton v. Tull*, 1962, 234 Ark. 882, 356 S.W.2d 20, 25, stated that "[t]he statute is open to either interpretation"; i. e., no recovery if the percentage of fault of plaintiff is equal to or less than the percentage of fault of each defendant or recovery if fault of plaintiff is less than that of all defendants combined. The Arkansas statutes pertaining to including the plural, Ark.Stats., §§ 1–202 through 1–204, are all likewise different than those of Wyoming. If the Wyoming legislature intended to adopt the "Arkansas Rule," it should have adopted the pertinent Arkansas stat-

---

5. It should be noted that the only changes made by Wyoming to Wisconsin's law were as follows (Wyoming material added is underlined. Wisconsin material deleted is shown by lining through.):

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negli-

gence resulting in death or in injury to person or property, if ~~such~~ contributory negligence was not as great as the negligence of the person against whom recovery is ~~sought, but any~~ sought. Any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering." Wis.Stat.: 895.045 (1965).

ute, including its statutory interpretation rules. Since we do not have the same statutes, we should not attempt to apply Arkansas law. That is like trying to fit a round peg into a square hole.

Finally and also importantly, we are bound by *Woodward v. Haney*, Wyo.1977, 564 P.2d 844, where, when asked to construe the Wyoming Comparative Negligence Act, this court stated:

"* * * Where a statute that has been construed by the courts of last resort of another state has been enacted in the same terms by the Wyoming Legislature, the Legislature is presumed to have adopted it as a part of the law and intended the same construction apply in this state. * * *" Id., 564 P.2d at 845. The conclusion was then reached that the legislature intended "to adopt the Wisconsin judicial construction of the comparative negligence statute at the date of enactment. * * *" Id., at 846. We have, therefore, already decided the question. The precedent of this court should have some stability and should be abandoned only when there is no longer any reason for the rule. It gives us a firm anchor in this case.

Plaintiffs have argued that, if necessary, *Woodward* should be overturned because of the inherent unfairness of the "Wisconsin Rule" to all plaintiffs. The Board counters that the "Arkansas Rule" is inherently unjust to many defendants, including the Board. In 1973, the Wyoming legislature enacted the comparative negligence scheme in an attempt to develop a more equitable judicial system. No one disputes that under either the Wisconsin or the Arkansas rule a more equitable system will result than was had formerly under the doctrine of contributory negligence. We must be satisfied with that; we do not believe we

are in a position whereby we can conclude as a matter of law that *Woodward* was wrongly decided because the "Wisconsin Rule" that it dictates be used in this matter is patently more unfair than the "Arkansas Rule"; [6] that is for the legislature to decide. *Woodward* is sound, authoritative and pertains to the same act. This is a legislative decision, not ours. The comparative negligence doctrine is the handiwork of the legislature not the courts of Wyoming. The legislature is at liberty to amend the statute following this decision. As has been stated elsewhere:

"Numerous examples of unfairness have been cited by both parties in this case to support their respective positions. The law governing tort liability will never be a panacea. There have been occasions in the past when the bar of contributory negligence and the concept of joint and several liability resulted in inequities. There will continue to be occasions under the present comparative negligence statute where unfairness will result. * * *" *Brown v. Keill*, 1978, 224 Kan. 195, 580 P.2d 867, 874.

Weighing the effects of either rule does not lead to a decisive conclusion one way or the other. Whatever examples we attempt to build, depending upon the posture the beholder has in or believes about litigation, some will find fairness and others will visualize unfairness. The following seems to be a popular example: plaintiff is 40% negligent, defendant A is 20% negligent, defendant B is 20% negligent and defendant C is 20% negligent. The plaintiffs' lawyer argues that in this total negligence picture "you three combined to hurt me—now pay because your collective negligence is greater than mine." On the other hand, the lawyer for defendant A retorts, "whoa

---

6. The danger of what someone other than a plaintiff would consider an injustice to a defendant under the Arkansas rule can readily be seen in the case that created that rule. There, Luther Tull sought damages against Richard Walton, D. A. Brigham and Herman Glenn as a result of a car accident. The jury assigned 60% of the fault to Glenn, 20% to Walton, 10% to Brigham and 10% to Tull. The court held Brigham liable. Under the doctrine of joint and several liability, 90% of Tull's damages can be collected from Brigham, even though Tull's and Brigham's negligence contributed to the injuries in equal amount and their negligence was slight in comparison to the negligence of the other parties. *Walton v. Tull*, 1962, 234 Ark. 882, 356 S.W.2d 20.

there, this is a comparative negligence state and a nation of individual rights, as far as I am concerned you were more negligent than I and besides why should I pay for some one elses negligence." We, as a court, represent neither plaintiffs nor defendants.

Many would see inequity develop with respect to the form of judgment which would follow under § 1–1–110, W.S.1977 pertaining to contribution where two or more persons become jointly and severally liable for the same injury or wrongful death. If one defendant is 1% negligent, another 70% negligent and the plaintiff 29% negligent, the 1% defendant has a total liability for plaintiff's recovery and may end up paying the entire judgment with only an empty right of contribution against a bankrupt 70% negligent defendant or unnamed tortfeasor who simply cannot be found. Such a result can be said to be a complete contradiction to the fairness sought by the comparative negligence doctrine.[7]

When we consider the "advantages" one way or the other, we become more convinced that we are dealing with what is a legislative function to establish concepts of fairness and unfairness. The legislature created the doctrine; and when we construe its language to carry out its intent, our function ends. There remains in a debatable subject such as this a societal decision for the legislature.

Since the district court failed to apply the "Wisconsin Rule" when transforming the jury's verdict into a judgment, the judgment must be reversed.

## V

Not only did the district court err in rendering its judgment, but also it erred in instructions to the jury. This occurred when the court informed the jury, in effect, that the "Arkansas Rule" was the applicable law. Since the "Wisconsin Rule" was adopted by the legislature and since § 1–1–109(b)(iii) requires that the jury be in-

formed of the significance of its verdict, the court failed to comply with the statute. The Board did timely object to the instructions claiming they were erroneous, but has not raised the challenge here. Its position on appeal, however, appears to be an attempt to have its cake and eat it too; it seeks to protect a verdict that was produced by a jury erroneously instructed as to the law, because the verdict will give the Board a favorable result if the correct law is applied to it when molding the judgment. This approach we cannot sanction. Thus, we hold that where the district court has erred in construing the applicable law and that error has properly been brought to this court's attention, we will reverse whatever segment of the proceedings below that is directly challenged as well as all other areas in which the same error was made. For that reason, not only must the judgment in this case be reversed, but also the jury's verdict; therefore, we will remand for a new trial. But first a few minor points remain.

## VI

During the course of our research and study it has been discovered that § 1–1–109(b), W.S.1977 does not correctly reflect the legislation actually enacted by the legislature. In order to demonstrate the error of the 1977 Republished Edition of the Wyoming Statutes it is necessary to work our way through the legislative action, step by step.

HB–94 was introduced on January 12, 1973[8] and read:

### "A BILL

"for

"AN ACT to create section 1–7.2 of the statutes relating to civil actions for personal injuries, wrongful death and injury to property; abolishing common law defense of contributory negligence; establishing a rule of comparative negligence; and providing an effective date.

---

7. See *Kowalske v. Armour and Company*, 1974, 300 Minn. 301, 220 N.W.2d 268.

8. Digest of House Journal, 1973, p. 626.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WYOMING:

"Section 1. Section 1–7.2 of the statutes is created to read:

"*1–7.2. Comparative negligence.* Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the negligence resulting in death or in injury to person or property was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished by the court, or by the jury, if the action is tried by jury, in proportion to the amount of negligence attributed to the person recovering.

"Section 2. This act is effective upon passage.

"END)"

On January 25, 1973 an amendment[9] was passed in the House adding a new subsection which provided:

"(b) The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering."

After several other amendments, the bill was adopted by the House on January 27, 1973 and sent on to the Senate in the following form:[10]

"COMPARATIVE NEGLIGENCE

"AN ACT to create section 1–7.2 of the statutes relating to civil actions for personal injuries, wrongful death and injury to property; abolishing common law defense of contributory negligence; establishing a rule of comparative negligence.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WYOMING:

"Section 1. Section 1–7.2 of the statutes is created to read:

"1–7.2. Comparative negligence.

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished, in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial direct the jury to find separate special verdicts;

"(ii) If a trial before the court without a jury make special finds of fact;

*determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering.*" (Emphasis added.)

It is important to notice the lack of indentation of the italicized portion for purposes of identification, and observe that "(i)" and "(ii)" are each in the alternative depending upon whether trial is to the jury or to the court and the italicized portion applies to each, whatever type of trial is had.

On February 5, 1973, unchanged, it was passed by the Senate and on February 8, 1973, the Governor signed it, in the form of Enrolled Act No. 16, into law.[11] However, somewhere along the way, probably in the course of being retyped into the form of an enrolled act, subsection (b) was altered, the typist probably not realizing the significance, so that it read:

"(b) The court may, and when requested by any party, shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

9.  House Digest, 1973, p. 627.

10. House Digest, 1973, p. 628.

11. House Digest, 1973, p. 628; ch. 28, Session Laws of Wyoming, 1973.

"(ii) If a trial before the court without a jury, make special findings of fact; *determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering.*" (Emphasis added.)

It should be now noted that the italicized portion of HB–94, supra, as finally passed, has become, in the enrolled act, a part of "(ii)" and causes it to appear as applicable only to a trial before the court. The semicolon following the word "fact" alerted us that there must be some erroneous arrangement of the paragraphing.

There is no indication that this change was intentional. Thus, we may conclude that the legislature's intent was for both the jury and the court when without a jury to determine the amount of damages and the percentage of the total negligence attributable to each party.

On March 1, 1976 the following act, Senate File No. 31,[12] was signed by the Governor:

"CIVIL PROCEDURE—CLAIMS FOR RELIEF

"AN ACT to create W.S. 1–7.7 relating to pleading personal injury or wrongful death; placing limitations upon the content of the ad damnum clause and providing for an effective date.

"Be it Enacted by the Legislature of the State of Wyoming:

"Section 1. W.S. 1–7.7 is created to read:

1–7.7. Pleadings; ad damnum clause. The ad damnum clause or prayer for damages incorporated in a pleading which sets forth a claim for relief based upon personal injury or wrongful death shall not state any dollar amount as alleged damages or demand a sum as judgment other than an allegation that the damages are of an amount necessary to establish jurisdiction of the court. *Nothing herein shall be construed to prevent any party from arguing to the court or jury*

the amount of his claim in money. In all cases the court shall inform the jury of the consequences of its verdict. (Emphasis added.)

"Section 2. This is effective May 28, 1976."

In order to further clearly identify the effect of the legislative history on the Comparative Negligence Act, the legislature, while renumbering the Code of Civil Procedure in 1977, modified the various comparative negligence enactments into the following form for § 1–1–109(b):

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

So, the legislative action has not been captured in the current working statutes and it would be our thought that the Republished Edition should be corrected accordingly.

Our going through the foregoing exercise was to accomplish two purposes: First, to accurately point out the language structure of § 1–1–109(b) as passed by the legislature; and, second, to assure ourselves that the proper procedure was to submit to the jury a special verdict form for the jury to determine damages and the percentage of negligence attributable to each party named and unnamed. The trial judge utilized a correct procedure in that regard.

### VII

The jury must ascertain the percentage of negligence of all participants to an occurrence. That can be illustrated by visualiz-

12. Chapter 10, Session Laws of Wyoming, 1976.

ing the total negligence as a pie and then portioning out to each participant a slice equal to the percentage of his negligence. In this case it would then appear:

Lea — 0%
Board
Bourquin
Schaffner
Ridenour
5%
6%
6%
6%
Hance
77%

Hance, having settled with plaintiff, could not appropriately be made a party, but determination of his percentage of negligence is necessary for a total negligence picture.

Since the statute makes no reference to problems arising when there were numerous participants in the transaction leading to the injuries sued upon, it is necessary to look to Wisconsin law for help as required by *Woodward*, supra. Of particular import is *Walker v. Kroger Grocery & Baking Co.*, 1934, 214 Wis. 519, 252 N.W. 721, 727–728, where the Wisconsin Supreme Court stated:

"Section 331.045, Stats., in connection with providing that contributory negligence shall not bar a recovery in an action by any person for negligence, 'if such negligence was not as great as the negligence of the person against whom recovery is sought, * * *' provides that 'any damages allowed shall be diminished by the jury in the proportion to the amount of negligence attributable to the person recovering.' That clause as quoted is, in a measure, incomplete in that, while it specifically mentions 'the amount of negligence attributable to the person recovering,' as one of the terms of the proportion, it does not state what constitutes the other term of the proportion. However, inasmuch as that provision does clearly limit the one term of the proportion to 'the negligence attributable to the person recovering,' the language of the statute does not admit of including in that term of the proportion causal negligence which is attributable solely to some other participant, and not to the person recovering. *As a result, the causal negligence of all of the other participants in the transaction must be deemed to constitute the other term of the proportion.* * * * Now, by the virtue of section 331.045, Stats., the instances in which there is a right to recover have been increased in that, even though there was contributory negligence, recovery is not barred if such negligence was not as great as the negligence of the person against whom recovery is sought. If such contributory negligence was as great as the negligence of one of the tort-feasors against whom recovery is sought, then as to that particular tort-feasor there still is no right to recover. That is out of the picture as far as liability on his part to the party whose negligence was as great as his is concerned. On the other hand, from every remaining tort-feasor, whose negligence was greater than that of the person seeking to recover, there exists now, by virtue of the statute, a right to recover, subject, however, to the limitation prescribed by the statute, that the damages allowed shall be diminished in proportion to the negligence attributable to the person recovering. That is the only limitation prescribed in respect to the amount recoverable. Otherwise, there is no provision which effects any change in the common-law rule that all tort-feasors who are liable at all are liable to the injured person for the entire amount now recoverable by him." [13] (Emphasis added.)

In a case in which the plaintiff had prior to trial settled with one of the tortfeasors, *Pierringer v. Hoger*, 1963, 21 Wis.2d 182,

---

**13.** Often challenged, this case has consistently been reaffirmed by the Wisconsin Supreme Court. *Reiter v. Dyken*, 1980, 95 Wis.2d 461, 290 N.W.2d 510, 515; *Soczka v. Rechner*, 1976, 73 Wis.2d 157, 242 N.W.2d 910, 914; *Fitzgerald* *v. Badger State Mut. Cas. Co.*, 1975, 67 Wis.2d 321, 227 N.W.2d 444, 449; *Chille v. Howell*, 1967, 34 Wis.2d 491, 149 N.W.2d 600, 605. Nor has the legislature of Wisconsin succumbed to pressures for change.

124 N.W.2d 106, 111–112, the Wisconsin Supreme Court ruled that:

" * * * A release of one tort-feasor before trial and subsequent dismissal of the action and counter-claim against him does not complicate this problem. The instant releases contemplate such an issue of allocation as binding upon the plaintiff because he has satisfied that part of his cause of action for which liability is found to be attributable to the settling tort-feasors. The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. * * *

"We have held in cases dealing with the comparison of negligence between a plaintiff and a defendant which involved the negligence of a nonparty that it was error not to include in the apportionment question submitted to the jury the causal negligence of the nonparty in order to determine the percentage of negligence of the defendant, but on the facts such error was not prejudicial. However, here, the failure to include in the apportionment question the causal negligence of the settling respondents would because of the releases necessarily be prejudicial to the nonsettling appellant. * * * " (Footnote omitted.)

Further, guidance may be found in the decisions of the courts in those states that have, like Wyoming, derived their statutes from Wisconsin's. In *Ferguson v. Northern States Power Co.*, 1976, 307 Minn. 26, 239 N.W.2d 190, 196, the Supreme Court of Minnesota recognized that Minnesota's comparative negligence statute was adopted from Wisconsin's. The case involved multiple defendants and, thus, the decision is persuasive. The particular question presented for review concerned the wisdom of the following questions and answers in the special verdict:

"QUESTION 9: * * * taking all of the negligence which contributed to the incident at 100%, what percentage or proportion thereof do you attribute to:
"(a) Northern States Power
Company? 25%

"(b) David L. Ferguson? 75%

"QUESTION 10: * * * taking all of the negligence which contributed to the incident at 100%, what percentage or proportion thereof do you attribute to:
"(a) Northern States Power
Company? 30%

"(b) Scott Ferguson? 70%"

[Id., 239 N.W.2d at 195.]

The court rejected the verdict stating:

"This is not consistent with our comparative negligence statute and can lead to an erroneous result. In *Winge v. Minnesota Transfer Ry. Co.*, 294 Minn. 399, 403, 201 N.W.2d 259, 263 (1972), we set forth the function of the comparative negligence statute:

" ' * * * Our comparative negligence statute, Minn.St.604.01, which exempts no class of litigants from its application, now requires a comparison of relative fault. While the statute speaks of a comparison of negligence, in application what is really compared, upon a consideration of all relevant facts and circumstances, is the relative contribution of each party's negligence to the damage in a causal sense.'

"In this case the jury determined that NSP, Scott Ferguson, and David Ferguson were all causally negligent, each contributing to the accident in which Scott was injured. In order to reach a proper result, consistent with our statement in *Winge*, the jury should have apportioned all of the causal negligence, assuming that to be 100 percent, among those parties the jury had determined, by their previous answers, to have contributed to the accident. In this case one question should have been submitted requiring apportionment of causal negligence among

NSP, Scott, and his father." (Footnotes omitted.) Id., 239 N.W.2d at 195–196.

But, in a footnote, the court conceded:

"This case is not the same as the situation presented in *Vroman v. Kempke*, 34 Wis.2d 680, 150 N.W.2d 423 (1967), where it was held improper to include the negligence of the two plaintiffs in the same comparative negligence question with the defendant. In that case the negligence of each plaintiff was passive, not active, and did not contribute to the other's injuries." Id., at 196, fn. 8.

We gave consideration to separate verdicts for each plaintiff and each defendant in order to compare the negligence of each to 100%, as did the trial court in *Ferguson*, but concluded that the same result as to apportioning of negligence can be reached by comparing the relative fault of each party seeking recovery to that of each party from whom recovery is sought without a separate verdict as to each plaintiff and each defendant and actor not a party to the action. Converting the negligence of a plaintiff with 6% negligence into parts of a whole of 100%, we find that as between these two parties plaintiff is 54.55% negligent and defendant 45.45% negligent. The problem would be complicated to do otherwise when the question of contribution between defendants must be settled. A further question in the special verdict form would also then be necessary. The work of the jury could be unnecessarily complicated and a potential of inconsistency would exist.

In *Vroman v. Kempke*, supra, a Wisconsin case, the jury found that the plaintiffs, two guest-passengers, had been contributorily negligent. It was then asked to distribute one hundred percent of the negligence among the defendant-driver and the two plaintiffs. The jury allotted fifty percent of the causal negligence to the driver and twenty-five percent to each passenger. The Wisconsin Supreme Court concluded:

"* * * It was not proper to include the passive negligence of the two guest-passengers in the same comparative negligence question with the active negligence of the host and thus require the jury to assume the total of the negligence, active and passive, of all the parties constituted 100 percent. Such form of verdict would be correct in the rare case where the negligence of the passengers was active in the sense it contributed with the host's negligence to the accident and thus each party could be considered a tort-feasor as against the other parties. However, that is not the case here. The negligence of each of the passengers was passive in nature and contributed only to her own injuries, not to the accident or to the injuries of the other passengers. Neither plaintiff was a tort-feasor causing harm to others. As used in this context, whether negligence is active or passive is not determined by whether the acts were of commission or omission but whether they were a cause of the accident or only of injuries. The negligence of each passenger went no further than to account for that passenger's presence in the car under the conditions and at the time it went off the road. Since the negligence of one passenger had no relationship to the negligence of the other passenger, the passive negligence of both could not be included in the same comparative-negligence question.

\* \* \* \* \* \*

"* * * Passive negligence of the various plaintiffs cannot be compared in the same question; two separate comparison questions must be submitted, each involving only the negligence of one plaintiff and the defendant driver." Id., 150 N.W.2d at 425–426.

We find the logic of these cases, decided under statutes from which ours was derived, compelling. We conclude that in a comparative negligence case the jury must consider the negligence of not only the parties but all the participants in the transaction which produced the injuries sued upon. Further, the verdict form must allow the jury to apportion the total negligence proximately causing the injury among the partic-

ipants.[14] Finally, particular care should be taken when multiple plaintiffs or claims are present so that only the negligence that proximately causes any particular injury is considered by the jury when apportioning fault as to that injury. Passive and active negligence must be distinguished.

## VIII

The plaintiffs' appeal challenges the trial court's decision to deny plaintiffs' request for a continuance and try the case immediately despite the temporary absence of plaintiff James Lea. The allegation is that under the circumstances, the trial court abused the wide discretion, vested in it, to make determinations as to whether a continuance should be granted. Since we are reversing and remanding for a new trial, we will dismiss the plaintiffs' issue in this regard as moot on the assumption that James Lea will be available when the matter is retried.

## IX

The judgment is reversed and this case remanded for a new trial consistent with this opinion.

McCLINTOCK, Justice, specially concurring.

In *Woodward v. Haney*, Wyo., 564 P.2d 845 (1977) we reiterated the rule that had applied in this state since *Crumrine v. Reynolds*, 13 Wyo. 111, 118, 78 P. 402, 403 was handed down in 1904, namely, that a statute adopted from another state "is presumed to have been adopted in view of the construction theretofore placed upon it by the courts of the state from which it was taken." I respect that rule and believe that what it means is that the courts should not by judicial legislation tamper with the legislative purpose and intent.

THOMAS, Justice, dissenting, with whom ROSE, Chief Justice, joins.

I dissent from the views expressed in the majority opinion in this case. In my judgment the court is presented with an opportunity to choose between the rule pursuant to which the plaintiff's negligence is compared with that of each individual defendant and the rule pursuant to which the plaintiff's negligence is compared to all of the defendants in the aggregate. I find that the rule pursuant to which the plaintiff's negligence is compared to the combined negligence of all defendants is the better rule because it is more likely to reach the proper result in the greater number of cases. Consequently, I would affirm the action of the trial court in so instructing the jury although I have some criticism of other aspects of the trial court's treatment of this problem.

In my view the majority opinion represents a step backward with respect to the development of the comparative negligence aspect of the law of torts in the State of Wyoming. If there is anything that is apparent it is that in adopting the comparative negligence rule the legislature intended to change the contributory negligence rule which foreclosed recovery by an injured person because of that person's own negligence. The majority opinion, however, recognizes a hypothetical situation in which an injured plaintiff whose negligence was evaluated as only 40 percent would be foreclosed from any recovery because three defendants were found to be equally at fault as among themselves. It is clear that if only one defendant were involved, the plaintiff would recover. By splitting the defendant into more than one, the plaintiff is denied recovery just as though contributory negligence were still the law in Wyoming. I wonder if, as so construed, the statute af-

14. All of the participants to the transaction should be joined in the action. This will encourage judicial economy because otherwise the result reached in the case may not be given collateral estoppel effect and therefore a second action might be necessary. However, where as here one of the participants has set-tled with all the claimants, joinder of the driver Hance should not be allowed since it would in effect defeat the purpose of a settlement, but the determination of his percentage of negligence is necessary to complete the total negligence picture.

fords equal protection to all injured persons.

I view as the primary justification for the rule selected by the majority opinion the proposition espoused in *Woodward v. Haney*, Wyo., 564 P.2d 844 (1977), that a legislature is presumed to have adopted the construction placed upon a statute by the courts of the state from which the statute originated as of the time of its adoption. In that case we noted that our legislature at the time of our opinion already had amended the statute to change the rule from that in vogue in Wisconsin to the end that the Wyoming trial court does advise the jury of the consequences of its verdict. While this court applied the presumptive rule in that case, it well may be that the legislative enactment in 1976 should have raised greater doubts as to the wish of the legislature to have Wyoming law saddled with and ridden by the construction of its comparative negligence statute previously made by the Wisconsin court.

The majority also points to the clear language of the statute which uses the singular word "person" (from whom recovery is sought) as manifesting the appropriate basis for comparing negligence. In looking at the language of the statute, the majority eschews the application of § 8–1–103(a)(v), W.S. 1977, to the effect that words in the plural form include the singular and words in the singular form include the plural. The conclusion reached by the majority is that the statute has no application because that construction would be plainly contrary to the intent of the legislature. When the issue which is resolved by adopting the Wisconsin construction is the intent of the legislature this latter reasoning is circuitous.

In addition, the majority opinion raises the spectre of the impact upon a slightly negligent defendant if the defendant who is guilty of the major degree of negligence turns out to be impecunious. Insofar as the impecunious joint tort-feasor is concerned, it is clear that the effect of the choice by the majority is to impose upon the injured plaintiff the risk of impecuniosity of a joint tort-feasor rather than to impose that risk upon one who contributed to the plaintiff's injuries, even though slightly. Historically, however, that concern was not manifested for a slightly negligent defendant, and if a plaintiff survived the contributory negligence rule he recovered a joint and several judgment against all the joint tort-feasors. I doubt that the legislature intended to change that rule. As will be noted, the contribution statute was adopted to deal with the problem of unequal fault among the joint tort-feasor defendants.

In *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977), at page 913 this court reiterated the rule that leads to the proper disposition of this case as follows:

> "All statutes relating to the same subject or having the same general purpose must be read as constituting one law, and, where possible, should be harmoniously construed in order to avoid conflicting and confusing results. *In re Adoption of Female Child X*, Wyo., 537 P.2d 719, 723 (1975); *Woolley v. State Highway Commission*, Wyo., 387 P.2d 667, 673 (1963)."

Since this case does involve both the application of the comparative negligence statute (Laws of Wyoming 1973, Ch. 28, § 1; § 7–1.2, W.S. 1957 (1975 Cum.Supp.)) and the contribution statutes (Laws of Wyoming 1973, Ch. 67, § 1; §§ 1–7.3 to 1–7.6, W.S. 1957 (1975 Cum.Supp.)), it is appropriate to consider them together. In so doing, one is ineluctably led to a conclusion that the legislature of the State of Wyoming did adopt an integrated plan for the allocation of loss in negligence cases, and the plan as a whole is sufficiently disparate from that in vogue in Wisconsin as to lead to the further conclusion that the rule comparing the negligence of the plaintiff to the collective negligence of the several defendants is the only rule that is consistent with the entire statutory scheme. (See the excellent dissenting opinion of Justice Bistline in *Odenwalt v. Zaring*, Idaho, 624 P.2d 383 (1980).)

In this regard it is important to note that the contribution statute which was in effect at the time of this accident was the one adopted in the Laws of Wyoming 1973, Ch. 67, § 1. It is, of course, in several respects different from the contribution statutes currently in effect, §§ 1–1–110 through 1–1–113, W.S.1977. Nevertheless, there are a number of key words or phrases which, pursuing the rule set forth in *Johnson v. Safeway Stores, Inc.*, supra, can only make sense if the negligence of all the defendants collectively is weighed against the negligence of the plaintiff in terms of liability. I begin with the phrase, "joint tort-feasors" found in § 1–7.3, W.S.1957 (1975 Cum. Supp.). According to subsection (c) of that statute, without regard to the degrees of negligence the joint tort-feasors would have an equal distribution of the common liability unless the disproportion of fault were such as to render that inequitable. In *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123 (1978), we indicated that the trial court must first find the inequity before the question of the percentage of the defendant's negligence need be submitted to the jury. There is critical language included in § 1–7.3(c), W.S.1957 (1975 Cum. Supp.). It must be noted that if the trial court finds it inequitable to order equal distribution of the common liability, in that event *"the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law."* (Emphasis added.) I find that to be clear statutory language which is antithetical to the rule from Wisconsin espoused by the majority opinion.

Of course, attention must be given to the definition of "joint tort-feasor" in subsection (d) of that statute. Throughout the statute, tort-feasors are considered as a unit vis-a-vis liability to an injured plaintiff. Other critical language is that of § 1–7.4, W.S.1957 (1975 Cum.Supp.), which provides:

"(a) Nothing in this act [§§ 1–7.3 to 1–7.-6] affects:

"(i) The common law liability of the several joint tort-feasors to have judgments recovered and payment made from them individually by the injured person for the whole injury. However, the recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasors;"

What I deduce from these provisions is that while it may be true that the Wyoming Legislature opted for the form of comparative negligence statute found in Wisconsin, it also opted for the contribution plan set forth in the statutes of Arkansas. It would follow that this court would not be bound to attribute to the legislature the construction given the Wisconsin statute by its courts, but could well attribute to the legislature the views expressed by the Supreme Court of Arkansas in *Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20, 8 A.L.R.3d 708 (1962). This is a view that is followed in a number of jurisdictions. *Graci v. Damon*, Mass.App., 374 N.E.2d 311 (1978), affirmed 383 N.E.2d 842 (1978); *Laubach v. Morgan*, Okl., 588 P.2d 1071 (1978); *Bradley v. Appalachian Power Company*, W.Va., 256 S.E.2d 879 (1979). In addition this result has been specifically adopted by three state legislatures. Connecticut General Statutes, § 52–572h (1977 Revised Edition); § 18.470, Oregon Revised Statutes 1977; and § 41.141(3), Nevada Revised Statutes (1979). It is the view that I believe should be adopted in Wyoming.

I reiterate that this approach, which weighs the plaintiff's negligence against the aggregate negligence of the several defendants in my judgment leads to the better result in a greater number of cases. I fear that in espousing the Wisconsin rule this court has bound the legislature to a construction of a statute which this legislature adopted in 1973, but the construction attributed to the legislature well may be at least 30 years behind the times. The construction adopted by the majority could

wreak havoc to the contribution rules the legislature has adopted.

I then would turn briefly to the manner in which the trial court submitted to the jury the negligence of the respective defendants. I think it was error to include the driver of the automobile in which Ridenour was riding without making him a party to the suit. Certainly that approach cannot be justified under § 1–1–113, W.S. 1977, or its predecessor, § 1–7.5, W.S.1957 (1975 Cum.Supp.). In both forms of the statute the reduction is related to the amount of the consideration paid for the release or the amount or proportion by which the release provides that the total claim shall be reduced, neither of which has anything to do with the respective percentages of negligence among the defendants. I therefore think that the case must be reversed. Like *Chrysler Corporation v. Todorovich*, supra, the parties should be allowed to join the driver Hance as a party if they choose, but if they do not choose to join him Hance's negligence cannot be weighed in the verdict. Hance well might find that he then would not be relieved from liability to make contribution to other joint tort-feasors because of the requirements of § 1–7.6, W.S.1957 (1975 Cum. Supp.).

In any event, I agree that the case must be reversed and remanded for a new trial. In submitting the issues to the jury, I would hold that the district court should apply the unit rule for weighing negligence between the plaintiff and the several defendants; that it would not be proper to include Hance in the formula used to weigh the negligence of the defendants among themselves unless he were made a party; and that the plaintiff is entitled to judgment against all the joint tort-feasors, jointly and severally, even though the negligence of one of them may be found to be smaller than the negligence of the plaintiff so long as the plaintiff's negligence was not as great as 50 percent. As stated earlier, I would adopt this approach because, as I see it, it is the better rule. In my view this court historically has been a forward-looking court in this area of the law. I regret that it is not willing to look forward instead of backward in this case.

Since the majority of this court has concluded that if any adjustment is to be made in the Wisconsin system as applied in Wyoming it must be done by the legislature, I would commend to the consideration of the legislature the Uniform Comparative Fault Act approved by the National Conference of Commissioners on Uniform State Laws in 1977 and 1979. In the Commissioners' Prefatory Note (12 Uniform Laws Annotated (1980 Cum. Pocket Part, p. 32)) reference is made to the modified type of comparative fault which has been adopted by Wyoming in the form of foreclosing recovery if the negligence of the plaintiff is equal to that of the defendant. The following language then appears:

"The modified type has several serious logical and practical disadvantages:

\* \* \* \* \* \*

"2. If there are several defendants at fault, the modified type produces a confused jumble. The plaintiff's fault may be less than that of some defendants and greater than that of others. If defendants having to pay seek contribution from those not under obligation to the plaintiff, the answer is uncertain; and when counterclaims arise, no solution seems available. *The problem is avoided in some modified-type states by providing that the plaintiff's negligence bars recovery only if it is greater than the combined negligence of all the defendants.* Although this is a helpful provision, it is essentially adopting the pure form in this situation." (Emphasis added.)

While it does espouse the so-called "pure" form of comparative negligence, the Uniform Comparative Fault Act does recognize an adaptation which can be used in a jurisdiction committed to the modified form of comparative negligence. It does resolve some of the rather difficult collateral problems which are not presented as issues in

this case but which will be problems to be dealt with in the future.