Joseph F. PALMENO, Appellant
(Defendant),

v.

Jeanne C. CASHEN, Appellee (Plaintiff).

No. 5398.

Supreme Court of Wyoming.

April 22, 1981.

Glenn Parker, of Hirst & Applegate, Cheyenne, for appellant.

Judith A. Chapman, of Boyer & Svilar, Lander, and H. S. Harnsberger, Jr. (argued), Riverton, for appellee.

Before ROSE, C. J., and McCLINTOCK *, RAPER, THOMAS and ROONEY, JJ.

RAPER, Justice.

This is an appeal from an August 21, 1980 judgment awarding appellee $24,814.15 for damages suffered in an automobile accident. The issues raised here involve comparative negligence, imputed negligence, the "Warning Device When Vehicle Disabled" statute,[1] and the sufficiency of the

---

* Retired March 26, 1981, but continued to participate in the decision of the court in this case pursuant to order of the court entered March 30, 1981.

1. Section 31–5–959, W.S.1977, the pertinent parts of which provide:

"(a) Whenever any motor truck, passenger bus, truck tractor, trailer, semitrailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway except as provided in paragraph (b):

"(i) A lighted fusee, a lighted red electric lantern or a portable red emergency reflector

evidence supporting the trial court's judgment.

We will affirm.

On the evening of November 11, 1978, in response to a call for wrecker assistance, appellant drove his wrecker truck to a point on Wyoming Highway 789, approximately two miles north of Lander, Wyoming, where two vehicles had driven off the northbound side of the highway during a heavy snowfall. The purpose of Mr. Palmeno's trip was to determine whether or not he could retrieve the vehicles from their positions off of the road and pull them back onto the highway if possible. He parked his south-facing truck on the northbound side of the highway, as close as he could get to the cars down in the barrow pit. However, the snow bank along the edge of the highway prevented him from completely removing his vehicle from the oncoming lane of traffic. Appellant activated his vehicle's emergency flashing lights and dimmed its headlights to low beam before leaving it to reconnoiter the automobiles off in the barrow pit.

Meanwhile, appellee was riding with her husband north on Highway 789 out of Lander towards Hudson. They were on their way there to pick up Mr. Cashen's daughter by a previous marriage for a weekend visit. Prior to their departure, appellee had expressed reservation about making the trip due to the road conditions; however, her husband allayed her fears by telling her he had just been on the roads and they were

not so bad. According to appellee, her husband was driving capably as they left Lander; she noticed the speedometer indicated their speed was 35 miles per hour. Appellee also observed that the night was quite dark, and with snow continuing to fall, the roadway was snow-packed. As the Cashen car crested a hilltop, appellee saw what she believed to be oncoming headlights; in actuality, it was appellant's parked wrecker. She believed that the vehicle was on the proper side of the road until "just a matter of a second or two" before the Cashen auto hit it. Mr. Cashen died in the accident; appellee was thrown into the windshield and was severely injured. Also, the Cashen vehicle was totally destroyed.

Appellee initiated this suit on August 7, 1979, for recovery of her separate injuries and damages against appellant. The case was tried without a jury on the 8th and 9th of July, 1980. On August 21, 1980, judgment was formally entered for appellee; damages were awarded totaling $24,814.15.

Appellant's first contention appears to be that the trial judge did not comply with the Comparative Negligence Statute, § 1–1–109, W.S.1977.[2] However, appellant has totally failed to explain in what way the trial judge erred. Under comparative negligence law in this state, the trier of fact should find the percentage of negligence attributable to each of the actors who have proximately caused the plaintiff's injuries regardless of whether the actors have been

shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.

"(ii) As soon thereafter as possible but in any event within the burning period of the fusee (fifteen (15) minutes), the driver shall place three (3) liquid-burning flares (pot torches), or three (3) lighted red electric lanterns or three (3) portable red emergency reflectors on the traveled portion of the highway * * *."

2. Section 1–1–109, W.S.1977:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of

the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;

"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."

named as parties to the lawsuit. *Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo.1981, 623 P.2d 1174; *Cline v. Sawyer*, Wyo.1979, 600 P.2d 725; *Beard v. Brown*, Wyo.1980, 616 P.2d 726. The purpose of this requirement is to accurately gauge the percentage of plaintiff's own contributory negligence, if present, which is an important finding since it will operate to reduce a plaintiff's recovery or completely preclude recovery if greater than that of each of the actors, separately determined on a one-on-one basis. *Ridenour*, supra.

Under its own terms, § 1–1–109, supra, becomes operative in those cases only where the plaintiff is contributorily negligent. Where the plaintiff is found to have been free from negligence, the statute does not apply. If the plaintiff's negligence is found to be nil, then his recovery is not diminished.

█ Here, the judge specifically found the appellee free from any negligence. Thus, § 1–1–109, supra, did not operate to require the trial judge to apportion the negligence between any of the parties or nonparties. The court had no jurisdiction over the estate of appellee's husband, the driver of the Cashen vehicle, since he was not a party to the suit, and any finding of a percentage of negligence in this case on the part of the driver of the pickup truck in which appellee was riding would not be binding on the estate of the deceased husband.

Appellant's second argument is that the trial judge erred in not imputing any negligence of Mr. Cashen to the appellee. He lists several factors as dictating that this imputation was mandatory:

" * * * She owned the car jointly with her husband. She had it at the time they were married. At the time of the crash she was engaged with him in the joint enterprise of picking up his daughter to spend the weekend with them. She was squeamish about the slick roads and got

very nervous when the road was slick. She knew of her husband's drinking and assumed that he had been drinking that day. She had a practice that when he was too drunk she would drive. She knew or reasonably should have known his state of intoxication. She could have driven the truck herself, but she allowed him to drive it that evening. After the crash his blood-alcohol level by a test which the Court admitted in evidence was 0.26% ethyl alcohol, an amount which the undisputed evidence, received by the Court, showed Mr. Cashen to be incapable of driving safely. Under this uncontroverted state of the Record, there was substantial evidence sufficient to impute the driver's negligence to Plaintiff, i. e., joint ownership and control of the vehicle together with a common purpose or joint enterprise of Plaintiff and the driver. * * * "

█ The law in this state is well settled that imputation of a driver's negligence will not occur unless the spouse-owner-passenger had actual control over the vehicle at the time of the accident. *Porter v. Wilson*, Wyo.1960, 357 P.2d 309; *Edwards v. Harris*, Wyo.1964, 397 P.2d 87; *Hume v. Mankus*, Wyo.1965, 401 P.2d 703; *Mooneyham v. Kays*, Wyo.1965, 405 P.2d 267.[3] The trial judge found that appellee had no control over the vehicle in which she was riding at the time her injuries occurred. There is substantial evidence in the record, as we have previously outlined, to support that finding; thus we must uphold it. Since appellee was found to have had no control over the vehicle, the trial judge's determination not to impute Mr. Cashen's negligence, as driver, to her was correct. His finding of 25% negligence by the husband, having been stated only as an alternative, is therefore a nullity.

█ Appellant also alludes to a joint enterprise. Though it is difficult to tell what he specifically had in mind, apparently ap-

---

**3.** Appellant cites *Gamet v. Beazley*, 1945, 62 Wyo. 1, 159 P.2d 916, to support his position that imputation should have been required. *Gamet*'s holding on the imputation issue is am-

biguous at best. If it meant that a demonstration that plaintiff had actual control over the vehicle was not necessary, then it did not survive *Porter*, supra.

pellant contends that Mr. Cashen and his spouse were on a joint enterprise such that Mr. Cashen's negligence should be imputed to her. However, in *Edwards v. Harris*, supra, 397 P.2d at 92, this court held that in order for a specific venture to be categorized legalistically as a joint enterprise, it must have been made pursuant to a search for material gain. Clearly that was not the case here, and the district court was correct in rejecting appellant's assertion. There is no evidence that there was any business or profit motive for the trip. The trip was clearly motivated only by the husband's desire to see his daughter.

Next appellant questions the propriety of the trial judge's construction of the "Warning Devise When Vehicle Disabled" statute, § 31–5–959, W.S.1977. Appellant's brief states:

> "The Trial Court expressed the view that W.S.1977 § 31–5–959 [4] required Defendant to place flares and that Defendant's failure to do so was negligence, even stating, 'There was no hint of emergency situation at that time.' and 'He [Defendant] could have waited until daylight.'"

A careful examination of the record, however, discloses that the statute was not the real factor in the trial judge's determination that appellant was negligent. The only reference to the statute occurs during a discussion of the testimony expected from a witness who was to be called the following day.

> "MR. GORMAN: * * * We do have a problem with Patrolman Galbraith as he's testifying in a criminal hearing tomorrow morning in Casper.
>
> "THE COURT: What will he testify to?
>
> "MR. GORMAN: Basically, he's the Casper Motor Carrier Officer. He's going to testify that he did not—Mr. Palmeno did not need authority from the Superintendent of the Wyoming Highway Department to operate his wrecker; that

Mr. Palmeno as a wrecker-operator under the rules of the Public Service Commission is authorized to—if there's only one feasible means to get those vehicles out— would be authorized to position his vehicle accordingly to extract them.

> "THE COURT: I don't have any problem with that.
>
> "MR. GORMAN: And his views of whether flares are required to be deployed.
>
> "THE COURT: Well, the statute's pretty clear on that, isn't it?
>
> "MR. GORMAN: There's no statute. There's one statute that talks about disabled vehicles.
>
> "THE COURT: And this was not a disabled vehicle.
>
> "MR. GORMAN: That's correct. Although he uses that statute—he uses the 500 feet.
>
> "THE COURT: In other words, what he's going to testify to is what his opinion is what a reasonable and prudent person would do under the same or similar circumstances?
>
> "MR. GORMAN: No. He's going to testify what his observations or feelings about that as a Highway Patrolman are; what is and what the lights signify; what they're supposed to mean to on-coming motorists and this type of thing. That's what he's going to testify about, generally."

■ The court's specific findings included the following in regard to the defendant's negligence:

> "Now, the Court finds that the emergency in this situation was developed and caused by the defendant placing his wrecker on the highway in the manner in which he did in this case. That's what created the problem. There were no flares, no warnings, nobody directing traffic, and he could have waited until daylight hours the next day to remove those vehicles. Had there been an emer-

---

**4.** Section 31–5–959, W.S.1977, covers flares being placed with respect to disabled vehicles.

Appellant's vehicle was not disabled.

gency situation of some kind on a travelled portion of the highway that's a different story. But that's as the Court views it and is not the story in this case. * * * "

It is clear that the trial judge did not in any way base his finding of negligence on the "Warning Device When Vehicle Disabled" statute. Therefore, no construction of the statute is before us to consider, and we find appellant's argument to the contrary without merit.

Appellant's final attempt to discredit the judgment claims that there was no substantial evidence to support it. This assertion is twofold. First, appellant argues that appellee was negligent as a matter of law since there was "undisputed evidence" of such lack of care. Second, he contends that the "undisputed evidence" demonstrated that appellant was free from negligence, and therefore is entitled to be exonerated as a matter of law. We disagree.

■■ When considering matters on appeal, we accept the evidence of the prevailing party as true. *Moberly Asphalt Maintenance, Inc. v. Royal Associates, Ltd.*, Wyo. 1980, 618 P.2d 1347, 1351. This court will not interfere with the trier of fact's findings unless they are clearly erroneous or so totally at odds with the evidence as to be irrational. *Bowen v. Korell*, Wyo.1978, 587 P.2d 653, 655. We are not free to substitute our judgment of the facts so long as findings of facts are supported by substantial evidence. *Plains Tire and Battery Company v. Plains A to Z Tire Co., Inc.*, Wyo.1981, 622 P.2d 917.

■■ Here, there exists substantial evidence in the record supporting the district court's findings. If the testimony of appellee is believed, then it is quite natural to find her free of negligence. It is within the province of the fact finder to weigh a witness' credibility. *Barnette v. Doyle*, Wyo. 1981, 622 P.2d 1349. Therefore, we must accept the trial judge's apparent decision to accept appellee's testimony over other evidence which contained the implication that appellee did not use due care.

The record also included an abundance of evidence which could be taken as establishing appellant's failure to use reasonable care. He parked his wrecker on the wrong side of a snow-packed highway on a dark and snowy evening. According to the Highway Patrol officer who reconstructed the accident, the wrecker was parked in such a manner that it was impossible for a car in the northbound lane of traffic to pass it without crossing into the southbound lane. It is reasonable to infer that the wrecker's lights created an illusion of the vehicle being on its own side of the road. Other testimony indicated that it was not urgent for the wrecker to remove the cars located off the highway in the barrow pit and a less dangerous location of the wrecker could and should have been accomplished. In light of such evidence, it is feasible for a reasonable man to conclude the appellant was negligent. Thus, we are constrained to accept the district court's findings.

Affirmed.