Bobby M. MARTINEZ,
Plaintiff-Appellant,

Phillip L. Martin,
Plaintiff-Appellant/Cross-Appellee

v.

UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Defendant-Third Party Plaintiff-Appellee/Cross-Appellant

v.

Edward Greg LITECKY, Third Party Defendant-Appellee.

Nos. 81–2030, 81–2132.

United States Court of Appeals,
Tenth Circuit.

Aug. 18, 1983.

Anthony F. Ross, Cheyenne, Wyo. (Vincent A. Ross, Cheyenne, Wyo., with him on the brief), for plaintiff-appellant/cross-appellee.

Henry F. Bailey, Jr., Cheyenne, Wyo., for defendant-third party plaintiff-appellee/cross-appellant.

Maxwell E. Osborn, Cheyenne, Wyo., for third party defendant-appellee.

Before HOLLOWAY, LOGAN and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge.

Plaintiffs Martinez and Martin appeal from a judgment entered on a jury verdict in this diversity negligence action in the District of Wyoming, Ewing T. Kerr, *Senior District Judge,* dismissing their complaint against the Union Pacific Railroad Company (UP) in which they sought to recover damages for personal injuries alleged to have been sustained as the result of a grade crossing collision between plaintiff Martin's car and a UP train in Cheyenne, Wyoming, on November 26, 1977. UP appeals from those portions of the judgment which dismissed its third-party complaint against third-party defendant Litecky and which dismissed its counterclaim against plaintiff Martin.

The essential issue presented on these appeals is whether the district court erred in its submission of the case to the jury under the Wyoming Comparative Negligence Statute, Wyo.Stat. § 1–1–109 (1977). We hold that it did. We vacate the judgment and remand the case to the district court for retrial on all issues.

I.

On the evening of November 26, 1977, a passenger car occupied by Martinez, Martin and Litecky collided with a coal car which was part of a UP freight train that was engaged in a switching operation at a grade crossing at the intersection of Nationway and Lake Place in Cheyenne, Wyoming. Although Martin owned the car, there was a conflict in the evidence as to whether Martin or Litecky was driving it at the time of the accident. Plaintiffs claim that Martin was driving, that Martinez was a front seat passenger, and that Litecky was a back seat passenger, seated directly behind Martin. UP claims that Litecky was driving, that Martin was the front seat passenger, and that Martinez was the back seat passenger, seated directly behind Litecky. As a result of the accident, Martin and Martinez sustained injuries. Litecky, who fled the scene of the accident, escaped without injury.

On September 11, 1979, Martinez and Martin commenced the instant action against UP, alleging that UP failed to provide adequate warning signals at the crossing; that the crossing was maintained negligently and in an unsafe condition; that UP failed to give adequate or timely warning that a train was blocking the crossing; that there was inadequate lighting at the crossing; and that UP knew or should have known that the crossing was dangerous.

UP subsequently filed a third-party complaint against Litecky, alleging that he was the driver of the car and that his negligence was the proximate cause of the accident. UP sought indemnification or contribution from Litecky in the event that UP was held liable for plaintiffs' injuries. In an amended answer, UP asserted a counterclaim against Martin, seeking indemnification or contribution from him in the event the jury concluded that he was driving the car at the time of the accident and UP was held liable for plaintiffs' injuries.

At the trial, there was considerable testimony as to the identity of the driver. Witnesses testified that either Martin or Litecky emerged from the driver's seat immediately after the accident. The identity of the driver was a material fact, since under

* Of the Second Circuit, by designation.

Wyoming law the liability of a driver ordinarily cannot be imputed to a passenger. For example, if the jury had determined that Litecky was the driver, and that he was contributorily negligent in his handling of the car, the jury nevertheless could have found that UP was 100% negligent with respect to Martinez and Martin and that they could recover whatever damages the jury determined they had sustained, leaving UP to seek indemnification or contribution from Litecky.[1]

After the close of the evidence and after the summations and charge, the court declined to submit to the jury a special interrogatory to determine the identity of the driver, despite the fact that plaintiffs and UP requested that such an interrogatory on this critical matter be submitted to the jury. Moreover, the court did not submit to the jury the issues raised by UP's third-party complaint against Litecky; indeed, the court dismissed the third-party complaint. Despite the testimony concerning Litecky's possible role as the driver of the car, therefore, the jury was precluded from finding Litecky to have been at fault. His name did not even appear on the negligence verdict form.[2]

Martinez and Martin objected to the court's refusal to separate their cases for purposes of the jury's comparative negligence calculation. The court stated that it did not separate the two plaintiffs' cases because they had sued jointly and therefore they had but one joint cause of action.

Furthermore, over the objection of Martinez and Martin, the court refused to expand on the oblique reference in its charge

to "joint venture" and the circumstances under which the negligence of a driver may be imputed to a passenger if a joint venture has been proven.

The jury returned a verdict—on the forms referred to above, note 2 *supra*—finding Martinez and Martin to have been jointly 85% at fault and UP to have been 15% at fault. The jury also assessed Martinez's damages at $4,000 and Martin's damages at $2,000.

Under the Wyoming Comparative Negligence Statute, the court dismissed with prejudice the complaint of Martinez and Martin against UP. The third-party complaint of UP against Litecky, as we have said above, also was dismissed with prejudice. Likewise, UP's counterclaim against Martin was dismissed with prejudice.

From the judgment entered June 30, 1981, on the jury verdict, the instant appeal and cross-appeal have been taken.

## II.

Martinez and Martin claim that in its submission of the case to the jury the court erred in the following respects: (1) in not submitting a special interrogatory to the jury to determine the identity of the driver of the car; (2) in improperly referring to a joint venture when joint venture was not an issue during the trial; and (3) in submitting a verdict form to the jury which failed to call for separate determinations of the negligence of Martinez and Martin.

UP claims that the court erred in dismissing its third-party complaint against Litecky, thus foreclosing the jury from deter-

---

1. There was a great deal of other evidence, particularly with respect to the parties' claims as to how the accident occurred. For the most part, this evidence has no bearing on the questions which we must resolve on these appeals. Moreover, since we are remanding the case for a new trial on all issues, we leave it to the parties to adduce at the new trial such evidence as may be relevant and material, without unnecessary comment thereon by us in this opinion.

2. Of the two verdict forms submitted to the jury, the one entitled "Verdict on Negligence", was as follows:

"We, the jury duly enpaneled in the above-entitled matter, upon the issues joined, do find the ratio of negligence to be as follows:

| | |
|---|---|
| BOBBY M. MARTINEZ and PHILLIP L. MARTIN | ———————% |
| UNION PACIFIC RAILROAD COMPANY | ———————% |
| TOTAL | ———————%" |

The other verdict form provided two blanks for the amount of damages sustained by plaintiffs, one for Martinez and one for Martin.

mining whether Litecky had been at fault. To this extent, UP's claim of error overlaps that of Martinez and Martin regarding the failure of the court to submit a special interrogatory to the jury.

We shall consider each of these claims of error seriatim.

### (1) *Failure To Submit Special Interrogatory*

The Wyoming Comparative Negligence Statute provides that "[t]he court may, and when requested by any party *shall:* (i) [i]f a jury trial, direct the jury to find separate special verdicts...." Wyo.Stat. § 1–1–109 (emphasis added).

Assuming for present purposes that requests for special verdicts and interrogatories within the purview of Fed.R.Civ.P. 49 are to be treated the same as requested jury instructions, we have held that the district court in a diversity action must look to federal law, not state law, to determine the propriety of granting or denying a requested jury instruction. *Wright v. Albuquerque Auto-Tr. Shop,* 591 F.2d 585 (10th Cir.1979) ("Though state law determines the substance of a jury instruction in a diversity action, the granting or denial of tendered instructions is a matter of procedure and is therefore controlled by federal law."); *Chavez v. Sears Roebuck & Co.,* 525 F.2d 827, 830 n. 2 (10th Cir.1975); *Hopkins v. Metcalf,* 435 F.2d 123, 124 (10th Cir.1971). Moreover, the Notes of the Advisory Committee on Rules accompanying Fed.R.Civ.P. 49(a) state that "[t]he Federal courts are not bound to follow state statutes authorizing or requiring the court to ask a jury to find a special verdict or to answer interrogatories."

■ It is clear that the district court here was under no obligation to require the jury to return special verdicts or to answer special interrogatories. The decision whether to do so was within the court's discretion. *Bartak v. Bell-Galyardt & Wells, Inc.,* 629 F.2d 523, 531 (8th Cir.1981); 9 Wright & Miller, Federal Practice and Procedure § 2505, at 492–98 (1971).

■ Once the court decides to submit forms of special verdict and special interrogatories, it must cover all material factual issues. *Simien v. S.S. Kresge Co.,* 566 F.2d 551, 555 (5th Cir.1978) (judge must cover all material issues raised by pleadings and evidence); *National Bank of Commerce v. Royal Exchange Assurance of America,* 455 F.2d 892, 898 (6th Cir.1972) (same); 5A Moore's Federal Practice ¶ 49.03[2], at 49–18 (2d ed. 1982); 9 Wright & Miller, *supra,* § 2506, at 499. The question presented here is whether determination of the identity of the driver was such a material issue.

The district court instructed the jury that it should consider the dispute over the identity of the driver as part of its determination of the relative fault of the parties. The court therefore intended that the jury consider the issue of who drove the car as a factor in reaching its verdict. Under Wyoming law the identity of the driver in a comparative negligence action carries special implications.

■ A driver's negligence under Wyoming law cannot be imputed to a passenger unless the conduct of the passenger had a material bearing upon the driver's operation of the car at the time of the accident. *Palmeno v. Cashen,* 627 P.2d 163, 166 (Wyo. 1981) (passenger must have "actual control" over vehicle at time of accident); *Hume v. Mankus,* 401 P.2d 703, 705 (Wyo.1965) (negligence of 18 year old driver cannot be imputed to younger brother passenger where driver directed auto "as he desired without instructions from anyone...."). For comparative negligence purposes, a passenger's negligence can be considered in the overall determination of fault only if his negligence contributed to the driver's negligence or was a proximate cause of the accident. *Board of County Commissioners of the County of Campbell v. Ridenour,* 623 P.2d 1174, 1191 (Wyo.1981). The mere fact that a passenger was in the car at the time of the accident of course is not sufficient to render his negligence "active".

For example, if it were determined that Litecky was the driver of the car, Litecky's negligence could not be imputed to the pas-

sengers absent proof that the conduct of one or both of them had a material bearing upon the driver's handling of the car at the time of the accident, e.g., that they "instructed or suggested [to]" Litecky how to operate the vehicle. *Porter v. Wilson,* 357 P.2d 309, 316 (Wyo.1960). Unless the jury concluded that the negligence of one or both of the passengers was more than passive, such negligence would have no bearing upon the driver's negligence as recorded on the form of verdict. Without a jury determination of the identity of the driver, the jury was precluded from making proper findings with respect to contributory negligence, as well as with respect to primary negligence.

■ We hold that the determination of the identity of the driver was a material factual issue that was not submitted to the jury for determination. We further hold that the court abused its discretion in denying plaintiffs' request, joined in by UP, for an interrogatory on the identity of the driver.

*(2) Reference To Joint Venture*

■ During its charge, the court stated to the jury: "[y]ou are further instructed that the negligence of a driver of a motor vehicle is not imputed to his passenger and guest unless you find that the parties were on a joint enterprise or a joint venture." This gratuitous reference to a joint venture was not based on anything in the record. Although the court correctly stated the Wyoming rule regarding imputed negligence when joint ventures are involved, *Edwards v. Harris,* 397 P.2d 87, 91–92 (Wyo.1964), no party claimed, in the pleadings or during the trial, that the occupants of the car were participants in a joint venture at the time of the accident. There was no evidence that they were travelling together for purposes of material gain, a prerequisite for a joint enterprise. *Palmeno, supra,* 627 P.2d at 167; *Edwards, supra,* 397 P.2d at 92. Although there was testimony that the occupants of the car had been driving around for several hours on a joy ride, the pecuniary element of a joint venture required under Wyoming law was totally absent.

Although Martinez and Martin requested that the court provide a fuller explanation of joint venture, it declined to do so.

We hold that it was error for the court to include this oblique reference to joint venture.

This does not end our inquiry with respect to this issue. The question remains whether this misleading comment to the jury was harmless or reversible error. It is possible that the jury may have concluded that the occupants of the car were indeed parties to a joint venture. This legal term of art colloquially might have been construed by the jury to apply to a group of youths driving around for several hours in search of entertainment. Left without any instruction by the court as to the definition of a joint venture under Wyoming law, the jury may have concluded that, even if it found that Litecky was the driver, his negligence had to be imputed to Martinez and Martin. In that situation, although the jury may not have found Martinez and Martin to have been at fault in their own right, the jury erroneously may have imputed Litecky's negligence to them.

■ We hold that the court's erroneous reference to joint venture was not harmless. Especially when viewed in conjunction with the court's refusal to submit an interrogatory to determine the identity of the driver, the error was compounded.

*(3) Combining Negligence of Martinez and Martin on Verdict Form*

As stated above, the court denied the request of Martinez and Martin to separate them on the negligence verdict form. For a number of reasons, we find this was error.

■ Under Wyoming law the jury must determine the percentage of fault of *each* party when the contributory negligence of the plaintiffs is at issue. *Ridenour, supra,* 623 P.2d at 1189; *Danulovich v. Brown,* 593 P.2d 187, 192 (Wyo.1979) ("When contributory negligence is a factor, the jury must determine the percentage of negligence attributed to each party ...."). Moreover, in *Ridenour,* the Wyoming Supreme Court

adopted the Wisconsin rule that the negligence of every participant (both parties and nonparties) in negligent conduct must be determined in order to arrive at a proper calculation of the comparative fault. *Ridenour, supra,* 623 P.2d at 1189; *Palmeno, supra,* 627 P.2d at 165–66. The Wyoming Supreme Court subsequently suggested that "actors" in a course of negligent conduct was a more appropriate designation of those who should be included on a negligence verdict form. *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 935 n. 9 (Wyo.1981) (adopting Restatement (Second) of Torts § 3 (1965)). In the instant case, at least the three parties who arguably were actively negligent (Martinez, Martin, and UP) should have been set forth on the negligence verdict form—with separate spaces for insertion of their respective percentages of negligence.[3]

■ Martinez, who none of the parties claimed was the driver of the car, and whose negligence, if any, presumably was limited to a passive role as passenger, probably should have been excluded from the negligence verdict form which should have included only those actors who were claimed to have been actively negligent. *Ridenour, supra,* 623 P.2d at 1191. In *Ridenour,* the court indicated in dictum that the passive negligence of a passenger cannot be compared on the same verdict form with the active negligence of the driver, unless the passenger "contributed with the [driver's] negligence to the accident. . . ." *Id.* (quoting *Vroman v. Kempke,* 34 Wis.2d 680, 684, 150 N.W.2d 423, 425–26 (1967)). The court in the instant case therefore erred in placing Martinez on the same verdict form with Martin and UP without in-

structing the jury that it must decide whether Martinez was actively or passively negligent.

For the reasons stated above, we hold that the negligence verdict form submitted to the jury failed to conform with the requirements of Wyoming law and that the court erred in submitting it to the jury in the form it did. Upon retrial, the court should frame a set of interrogatories which will conform to the requirements of Wyoming law.[4]

There may well have been other errors committed by the trial court in its charge to the jury, especially on the issue of damages. We believe that we have indicated above, however, sufficient errors on the issues of liability to warrant a new trial. We are confident that the trial court upon retrial, with the assistance of competent trial counsel, will devise appropriate instructions on all issues—liability and damages.

■ We do note that UP invites us to order a new trial on the issue of liability only, leaving stand the determinations made by the jury at the first trial as to the percentages of fault by the respective tortfeasors and the assessment of damages awarded to Martinez and Martin. We decline the invitation. The parties are entitled to a new trial on *all* issues, since we cannot say that the errors committed at the first trial on the issue of liability may not have tainted the jury's determination of damages.

The judgment is vacated and the case is remanded for a new trial consistent with this opinion.

VACATED AND REMANDED.

3. On retrial, upon proper instructions regarding the special interrogatory referred to above and its relationship to the negligence verdict form, presumably Litecky will be included on the negligence verdict form.

4. The court at the first trial instructed the jury that plaintiffs sued jointly on one cause of action and therefore had to be viewed as a single party for purposes of the determination of negligence. This, at best, was an overly formalistic view of the pleadings and at odds with the guidelines set forth by the Wyoming

Supreme Court in *Ridenour, supra.* Although plaintiffs' pleadings may have been inartfully drawn, it is clear that they pursued the action as joint and several plaintiffs and that each sought recovery on his own behalf. Moreover, it is hornbook law that the pleadings should be deemed conformed to the evidence and that the issues actually tried with the express or implied consent of the parties must be treated as if raised in the pleadings. Fed.R.Civ.P. 15(b); 3 Moore's Federal Practice ¶ 15.13[2], at 15–157 (2d ed. 1983).